# SOLAR TURBINES, INCORPORATED, Plaintiff,

v.

**James M. SEIF, Regional Administrator, Region III, United States Environmental Protection Agency, and United States Environmental Protection Agency, Defendants.**

Civ. A. No. 88–0221.

United States District Court, M.D. Pennsylvania.

May 26, 1988.

Harold A. Kurland, Nixon, Hargrave, Devans & Doyle, Rochester, N.Y., Terry R. Bossert, McNees, Wallace & Nurick, Harrisburg, Pa., for plaintiff.

Tim Haney, Asst. U.S. Atty., Harrisburg, Pa., Bradley S. Bridgewater, Peter Wykoff, U.S. Dept. of Justice, Lane & Natural Resources, Washington, D.C., Jean Anne Kingrey (Lead Counsel), Dept. of Justice, Land and Natural Resources Div., Washington, D.C., for defendants.

## MEMORANDUM

RAMBO, District Judge.

*Procedural Background*

Plaintiff, Solar Turbines, Inc. (Solar), filed this action February 10, 1988. Solar is the owner and operator of a gas turbine cogeneration facility currently under construction at a Caterpillar, Inc. plant in York County, Pennsylvania. The defendants are the Environmental Protection Agency (EPA or the Agency) and James M. Seif, the Regional Administrator for Region III of the EPA. Solar seeks relief in the form of a declaratory judgment and a preliminary and permanent injunction. Pursuant to 28 U.S.C. § 2201, plaintiff seeks a declaration that the EPA acted outside its jurisdiction in issuing an Administrative Order directing Solar to halt construction of its power plant. In addition, Solar sought a temporary injunction enjoining the EPA from enforcing its Administrative Order and from revoking, revising or challenging plaintiff's state-issued construction permit.

On February 12, 1988 the court granted plaintiff's request for a temporary restraining order (TRO) 678 F.Supp. 93. The order provided the TRO would remain in effect until the case could be heard on the merits. Originally a hearing on the merits was scheduled for March 21, 1988. Thereafter,

a stipulation was filed, Doc. No. 16, providing that the TRO would remain in effect until the court either disposed of defendants' motion to vacate and dismiss or until a hearing on the merits, but not beyond June 27, 1988. This memorandum and order is the court's disposition on defendants' motion to vacate and dismiss.

*Factual Background*

To obtain a permit to construct a facility which will emit air pollutants, a builder must satisfy both state and federal regulations. The federal regulations are found in the Clean Air Act, 42 U.S.C. § 7401, *et seq.*, and the state regulations for the Commonwealth of Pennsylvania are found in the Air Pollution Control Act, 35 Pa.Code, Chapter 23, which requires the builder to obtain a "plan approval," 25 Pa.Code § 127.11, from the Commonwealth of Pennsylvania Department of Environmental Resources (PADER).

To satisfy the federal regulations, facilities such as Solar's, which will emit a regulated pollutant in excess of specified amounts, must obtain a specific permit—Prevention of Significant Deterioration (PSD) permit, 42 U.S.C. § 7475. In the Clean Air Act, Congress provided a procedure whereby the appropriate state environmental agencies would be given EPA approval to issue the PSD permits. 42 U.S.C. §§ 7410(a)(2)(D), 7471, implemented by 40 C.F.R. § 51, *et seq.* PADER received approval for its permit process in 1984.

Before commencing construction at the Caterpillar site, Solar applied to PADER for a construction permit. PADER issued a final permit to Solar on September 9, 1987. On February 1, 1988 Solar received an Administrative Order (AO) dated January 25, 1988 issued by defendant Seif.

The AO states in pertinent part:

EPA finds that the PADER PSD permit issued to Solar Turbines does not conform to the requirements of Part C of the Act insofar as it fails to require installation of water or steam injection controls on the proposed gas turbines, in light of an absence of adequate justification as to why their installation is not required.

The construction of the Solar Turbine facility at the Caterpillar Tractor plant pursuant to an invalid permit constitutes a violation of Section 165(a) of the Act, 42 U.S.C. § 7475(a).

AO at "Conclusions of Law" ¶¶ 7 and 8. The AO ordered Solar to "cease any on-site construction activity" within ten (10) days after receipt of the AO.

*Discussion*

The emphasis in defendants' motion to vacate and dismiss is on whether the court has jurisdiction to hear this case in its present posture. Defendants argue the action is not ripe because the Agency has not taken final action vis-a-vis Solar.

The Clean Air Act has two sections delineating federal court jurisdiction in suits filed against the EPA. 42 U.S.C. § 7604, citizens suits, gives district courts jurisdiction over actions "to enforce such an emission standard or limitation, or such an order, or to order the Administrator to perform such an act or duty, as the case may be." The other section which delineates jurisdiction is 42 U.S.C. § 7607(b)(1). This section gives the circuit courts of appeals exclusive jurisdiction to review action taken by the EPA or its administrators which action involved approval or promulgation of implementation plans under various sections of the Clean Air Act or "any other final action of the Administrator under this Act ... which is locally or regionally applicable...." *Id.* In the memorandum, dated February 12, 1988, the court found it did not have jurisdiction pursuant to the section governing citizens suits, 42 U.S.C. § 7604, and the court agreed with the EPA that its action did not constitute final agency action so that 42 U.S.C. § 7607(b)(1) was not implicated. The court found jurisdiction based on 42 U.S.C. § 7604(e) (nonrestriction of other rights). This section is a savings clause as it provides, "[n]othing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek ... relief against the Administrator or a State agency...." *Id.* The court found this section applicable because Solar seeks

review of the Agency's activity under principles of constitutional law (taking of property without due process, Fifth Amendment, 28 U.S.C. § 1331), under the Administrative Procedures Act (Agency exceeded its authority, violated procedures, and abused its discretion, 5 U.S.C. § 702), and under the Clean Air Act (Agency has acted in excess of its authority under the Act, 42 U.S.C. § 7401, *et seq.*).

Today the court reconsiders its findings on jurisdiction, and specifically it reconsiders whether the EPA's action constitutes final agency action.

If agency action is not final, the controversy is not considered "ripe" for judicial resolution. The ripeness doctrine "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies and also ... protect[s] agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). The EPA argues its action is not final because the AO is not self-enforcing. Before the EPA could actually shut-down Solar's construction, it would have to go to court to seek an order enforcing its AO or seek injunctive relief. The Agency's argument is specious, but in light of the cases interpreting finality, it is ultimately unpersuasive.

In *Abbott Laboratories* the Commissioner of Food and Drugs issued regulations requiring labels and advertisements for prescription drugs which bear brand names to list the corresponding generic names. Drug manufacturers and a manufacturers' association made a pre-enforcement challenge to the regulations on the ground the Commissioner exceeded his authority. The Court found the agency action final even though the regulations were not self-enforcing. The regulations were "made effective upon publication, and ... compliance was expected." *Id.* at 151, 87 S.Ct. at 1517. In addition, the impact of the regulations upon the drug manufacturers was found "sufficiently direct and immediate as to render the issue appropriate for judicial review ... [in the pre-enforcement] stage." *Id.* at 152, 87 S.Ct. at 1517. If the manufacturers had not been permitted to bring a pre-enforcement suit, they would have had two choices: they could have either complied with the regulation which would have been a large financial burden, or they could have not complied and risked incurring civil and criminal penalties.

To illustrate what it termed a "flexible view of finality," *id.* at 150, 87 S.Ct. at 1516, the *Abbott Laboratories* Court discussed its earlier decision in *Columbia Broadcasting Systems, Inc. v. United States*, 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563 (1942). In *Columbia Broadcasting*, the Federal Communications Commission (FCC) promulgated regulations which provided it would not renew the licenses of local stations whose contracts with broadcasting networks contained certain provisions proscribed by the FCC. The court found the agency's action in promulgating the regulations was sufficiently "final" to warrant judicial review even though in fact no license had been denied or revoked. The regulations themselves had an effect on stations and broadcasters. The court reasoned:

> It is the signing of the contract which, by virtue of the regulations alone, has legal consequences.... The regulations are not any the less reviewable because their promulgation did not operate of their own force to deny or cancel a license. It is enough that failure to comply with them penalizes licensees, and appellant, with whom they contract. If an administrative order has that effect it is reviewable and it does not cease to be so merely because it is not certain whether the Commission will institute proceedings to enforce the penalty incurred under its regulations for non-compliance.

*Id.* at 417–18, 62 S.Ct. at 1200.

Another case which illustrates what is meant by final agency action is *Frozen Food Express v. United States*, 351 U.S. 40, 76 S.Ct. 569, 100 L.Ed. 910 (1956). Here, the Interstate Commerce Commis-

sion (ICC) issued an order listing a large number of specified commodities which it found to be non-agricultural. The ICC exempted from its supervision vehicles carrying the listed commodities. A carrier, claiming to be transporting what should have been considered exempt commodities, brought an action claiming the ICC should have included the carrier's commodities in its list. The carrier had not been a party to the administrative proceeding which gave rise to the ICC order, and the ICC order had no authority in and of itself; the order would have had effect only if and when the ICC brought an action against a carrier. Yet, the Court found the agency action of issuing the order sufficiently final because

> [t]he determination by the Commission that a commodity is not an exempt agricultural product has an immediate and practical impact on carriers who are transporting the commodities, and on shippers as well. The 'order' of the Commission warns every carrier, who does not have authority from the Commission to transport those commodities, that it does so at the risk of incurring criminal penalties.... Where unauthorized operations occur, the Commission may proceed administratively and issue a cease and desist order.... Such orders of the Commission are enforceable by the courts.

*Id.* at 43–44, 76 S.Ct. at 571.

The issue of finality and pre-enforcement was analyzed by the Third Circuit Court of Appeals in *A.O. Smith v. Federal Trade Comm'n,* 530 F.2d 515 (3d Cir.1976). There the Federal Trade Commission (FTC) ordered 345 of the nation's largest companies to complete and file Line of Business Reports Forms within 150 days. In the order to the companies, the FTC stated, " 'You are advised that penalties may be imposed under applicable provisions of Federal law for failure to file this report or for the filing of a false report.' " *Id.* at 519. The *A.O. Smith* plaintiffs sought declaratory and injunctive relief alleging, *inter alia,* the FTC issued the orders without statutory authority and in violation of plaintiffs' constitutional rights. The plaintiffs sought an order enjoining the FTC

from enforcing its orders or acting upon them in any manner contradictory to plaintiffs' interests. The FTC orders were not self-enforcing. Under the statutory scheme the agency had to go to court to seek enforcement, and penalties could not be imposed until notices of default were issued. Thus, argued the Government, "until the FTC seeks to enforce its orders, the district courts are without jurisdiction to entertain actions for declaratory and injunctive relief." *Id.* at 520. Even though the orders were not self-enforcing the court stated "viewing the matter pragmatically, we have no hesitancy in concluding that the ... orders were final and, therefore, fit for judicial review." *Id.* at 522.

There are common threads running through the cases discussed. Agencies took action (promulgated regulations or issued administrative orders). Some actions were directed at particular entities (i.e., the 345 companies in *A.O. Smith, supra*) and some actions were not (i.e., drug manufacturers generally in *Abbott Laboratories, supra*). The agency actions were not self-enforcing. Penalties could be incurred for failure to comply. And, finally, the fact that compliance was expected created a sufficient immediate impact on the plaintiffs to warrant pre-enforcement judicial intervention.

These threads run through the Solar situation as well. The EPA took action. It issued an AO directed at Solar. The AO is not self-enforcing. Penalties, both civil and criminal, could be imposed upon Solar for failure to comply. Compliance is expected.

The fact that compliance is expected and that such expectation has created a sufficient impact on Solar warranting pre-enforcement judicial intervention can be seen by comparing the situations in *Abbott Laboratories* with the present situation. In *Abbott Laboratories,* "[t]he regulations [were] ... clear-cut, and were made effective immediately upon publication; ... immediate compliance with their terms was expected." *Abbott Laboratories,* 387 U.S. at 152, 87 S.Ct. at 1517. With Solar, the EPA's AO was "clear-cut." The EPA

states unequivocally "the PADER PSD permit issued to Solar Turbines does not conform to the requirements of Part C of the Act.... The construction of the ... facility ... constitutes a violation of ... [the Clean Air Act]." AO at "Conclusions of Law" ¶¶ 7 and 8. Compliance was demanded within ten (10) days of receipt of the AO. This is not a situation, as the EPA has argued, where an agency has merely taken the initial step towards an ultimate action against a target. *See, e.g., Federal Trade Comm'n v. Standard Oil Co. of Cal.,* 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980) (FTC's issuance of a complaint where the agency stated it had "reason to believe" the target was in violation of federal trade laws, was held not final agency action because, *inter alia,* the agency action was not a definitive ruling on whether the target was in fact in violation of the laws). In the case at bar, prior to issuing the AO, the EPA investigated its reservations regarding PADER's conclusions on Solar's PSD application. Its "findings of fact" and "conclusions of law" are set forth in the AO as statements of the EPA's position on Solar's compliance, or lack thereof, with the Clean Air Act. The fact that the EPA may ultimately choose not to enforce its AO if Solar does not comply, does not render the agency action non-final. *See, e.g., Columbia Broadcasting System, Inc. v. United States,* 316 U.S. 407, 417–18, 62 S.Ct. 1194, 1200–01, 86 L.Ed. 1563 (1942).

Solar has represented that if it complies with the AO it could jeopardize the approximately $35,000,000 it alleges it has invested. Furthermore, it contends that for every month it is shut-down it will incur unrecoverable direct costs of $1,000,000, and its contracts to supply gas and energy could be terminated if the plant is not operational in the time frame anticipated by Solar and its customers. Likewise, if the *Abbott Laboratories* drug manufacturers had wished to comply, they would have incurred considerable expense in changing all their labels and promotional materials, and investing in new printing type and

supplies. The Court's observation in *Abbott Laboratories* on the alternative to compliance is applicable to Solar also. Non-compliance "may be even more costly. That course would risk serious criminal and civil penalties...." [1] *Abbott Laboratories,* 387 U.S. at 153, 87 S.Ct. at 1517–18. In answering the Government's argument that " 'mere financial expense' is not a justification for pre-enforcement judicial review," *id.* at 153, 87 S.Ct. at 1518, the Court stated:

> It is of course true that cases in this Court dealing with the standing of particular parties to bring an action have held that a possible financial loss is not by itself a sufficient interest to sustain a judicial challenge to governmental action. *Frothingham v. Mellon,* 262 U.S. 447 [43 S.Ct. 597, 67 L.Ed. 1078 (1923) ]; *Perkins v. Lukens Steel Co.,* 310 U.S. 113 [60 S.Ct. 869, 84 L.Ed. 1108 (1940) ]. But there is no question in the present case that petitioners have sufficient standing as plaintiffs: the regulation is directed at them in particular; it requires them to make significant changes in their everyday business practices; if they fail to observe the Commissioner's rule they are quite clearly exposed to the imposition of strong sanctions.

*Id.* at 153–54, 87 S.Ct. at 1518. The Court's statement is quite apt to the present case.

*Conclusion*

The court finds the EPA's action constitutes "final agency action." Therefore, as noted earlier, jurisdiction is properly in the courts of appeals. The court will grant defendants' motion to vacate and to dismiss.

ORDER

In accordance with the accompanying memorandum, IT IS HEREBY ORDERED THAT:

1) Defendants' motion to vacate and dismiss is granted;

---

1. In the case at bar there has been no evidence or argument on what civil or criminal penalties

are possible if Solar does not comply or whether the penalties are "serious."

2) This court's order dated February 12, 1988, Doc. No. 8, is vacated;

3) This action is dismissed for lack of jurisdiction;

4) Defendants' motion to modify the court's May 19, 1988 order is dismissed as moot; and

5) The Clerk of Court is directed to close the file.