**INDUSTRIAL HIGHWAY
CORPORATION,
Plaintiff,**

v.

**Colonel R.M. DANIELSON, District Engineer, New York District, United States Army Corps of Engineers, Defendants.**

Civ. A. No. 91–4367.

United States District Court,
D. New Jersey.

June 8, 1992.

As Amended July 6, 1992.

Kevin J. Coakley, Thomas B. Considine, Connell, Foley & Geiser, Roseland, N.J., for plaintiff.

Michael Chertoff, U.S. Atty., Michael A. Chagares, Asst. U.S. Atty., Office of the U.S. Atty., Newark, N.J., and Barry M. Hartman, Acting Asst. Atty. Gen., Environment & Natural Resources Div., U.S. Dept. of Justice, Daniel W. Pinkston, Trial Atty., Environmental Defense Section, Washington, D.C., for defendant.

## OPINION

WOLIN, District Judge.

Before the Court is a motion by defendant Colonel R.M. Danielson, District Engi-

neer, New York District, United States Army Corps of Engineers ("Corps"), pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss the complaint of plaintiff Industrial Highway Corporation ("Industrial") for lack of subject matter jurisdiction. Industrial instituted this action to challenge the Corps' decision not to issue a notice to proceed under Nationwide Permit 26, published at 33 C.F.R. § 330.5(a)(26). This motion requires resolution of a single legal issue: whether the Corps' decision constitutes "final agency action" reviewable in federal district court under 5 U.S.C. § 704. For the reasons that follow, the Court will grant defendant's motion.

## BACKGROUND

All facts relevant to the disposition of this motion are undisputed. Industrial owns an eight-acre tract in Woodbridge Township, New Jersey, on which it has planned to construct a building that will contain approximately 160,000 square feet of interior space. Industrial claims that to build the structure as planned would require it to, in regulatory terms, "discharge fill" into 2.45 acres of "wetlands".

Pursuant to 33 C.F.R. §§ 330.5(a)(26) and 330.7(b), Industrial served Colonel Danielson by certified mail with a pre-discharge notification letter dated October 8, 1990, which it "submitted as notice of activities authorized under the Nationwide Permit authorized by 33 CFR Section 330.5(a)(26)." Complaint, Exhibit B. Industrial indicated in the letter that it had already obtained, as required by 33 C.F.R. § 330.9(b)(3), a water quality certification from the State of New Jersey. *Id.;* see Complaint, Exhibit B (copy of Water Quality Certification, effective August 30, 1990). In response, Joseph J. Seebode, Chief of the Corps' New York District Regulatory Branch, sent Industrial a letter dated October 25, 1990, in which he stated that

the site in question was previously inspected by the Corps of Engineers during 1987, in response to reports ... that filling was occurring at the site without requisite permits. Those site inspections confirmed this to be the case.... [Y]ou were directed to remove the fill materials that had been illegally discharged into the waters of the United States.... to resolve the Clean Water Act violation present on the site.

Based upon the recent delineation performed by the New Jersey Department of Environmental Protection (NJDEP), it is evident that full restoration was not completed.... An inspection of the site on October 17, 1990 confirmed that all of the fill was not removed, and that such fill remains on the site in violation of section 404 of the Clean Water Act.

In light of the above, a Pre-discharge Notification Procedure is not appropriate. At this juncture it would be appropriate for you to either remove the remaining fill or submit an application for an individual Department of the Army permit to maintain the existing fill material from those areas not restored as required, and for the additional 2.5 acres of waters of the United States proposed to be filled.

Exhibit A, Defendant's Brief in Support of Motion to Dismiss.

Industrial took the position in its discussions with the Corps that Seebode erred in concluding that a Clean Water Act ("CWA")[1] violation remained uncorrected. It relied on an undated letter of May 1987 from Arthur J. LaPerriere, Acting Chief, Harbor Supervision and Compliance, Regulatory Functions Branch of the Corps. In that letter, LaPerriere concluded that

[e]xcept for some minor deficiencies, we found that the restoration work satisfactorily resolves the [CWA] violation.... Based upon assurances that these minor items will be corrected on May 5, 1987, we are rescinding the cease and desist order and closing the file on this case.

1. The Federal Water Pollution Control Act Amendments of 1972, and the amendments to it enacted in 1977 (the "Clean Water Act of 1977"), are officially known collectively as the "Federal Water Pollution Control Act", but are commonly referred to as the "Clean Water Act". The Court's references to the "CWA" are to the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*

Exhibit D, Certification of Kevin J. Coakley ("Coakley Certification"). Because it believed that the basis for Seebode's decision was erroneous, Industrial claimed that there was no basis to disallow it to proceed with its plans under Nationwide Permit 26.

Industrial met with Corps representatives in November 1990 and July 1991 in an attempt to persuade the Corps to change its position that an individual permit would be required. During this period Industrial also wrote a number of letters to the Corps stating its position and expressing frustration at delays in the permitting process. In a letter dated August 6, 1991, Colonel Danielson stated that, based on the Corps' Office of Counsel review of

> the complete application file for this proposal...., I have determined that our initial decision to require that [Industrial] obtain an individual permit was proper. Accordingly, we will continue with the processing necessary for an individual permit under the discretionary authority of the Division Engineer.

Exhibit F, Coakley Certification.

In September 1991, Industrial submitted additional documentation needed to complete its individual permit application. As of April 23, 1992, the individual permit application had been neither approved nor rejected. Coakley Certification, ¶ 36.

Industrial filed the complaint in this action on October 8, 1991, alleging the existence of subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1346. The complaint alleges that "Defendant's suspension of Nationwide Permit 26 as it relates to the Property was arbitrary and unreasonable and without basis in either fact or in law." Complaint ¶ 15. The prayer for relief "demands judgment declaring that Defendant erred in refusing to permit Plaintiff to utilize Nationwide Permit 26 and ordering Defendant to confirm to Plaintiff that work on the Property may proceed under said Nationwide Permit 26." Complaint at page 6.

## DISCUSSION

### A. *The CWA Permitting Scheme*

The CWA is a comprehensive statute enacted "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." CWA § 101(a), codified at 33 U.S.C. § 1251(a). As part of the comprehensive scheme, CWA § 404(a), codified at 33 U.S.C. § 1344(a), authorizes the Secretary of the Army, acting through the Chief of Engineers, to issue permits for "discharge[s] of dredged or fill material into the navigable waters at specified disposal sites." 33 U.S.C. § 1344(a); *see also* 33 U.S.C. § 1344(d) (defining "Secretary").[2] An unpermitted discharge of "any pollutant" into "navigable waters" constitutes a violation of CWA § 301(a), codified at 33 U.S.C. § 1311(a); *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 123, 106 S.Ct. 455, 457, 88 L.Ed.2d 419 (1985). "Pollutant" is broadly defined at 33 U.S.C. § 1362(6) to include, *inter alia*, "dredged spoil", "rock" and "sand." "Navigable waters" are defined broadly by the CWA to include all "waters of the United States". CWA § 502(7), codified at 33 U.S.C. § 1362(7). The United States Environmental Protection Agency has broadly construed the term "waters of the United States" to include most "wetlands." 33 C.F.R. § 328.3(a). Industrial does not dispute that the lands in question in this action are "wetlands" subject to the requirements of the CWA.[3]

Subject to certain restrictions in § 1344(c) that do not apply here, decisions by the Corps to grant or deny permits authorized under § 1344(a) are to be made "through the application of guidelines developed by the Administrator [of the Environmental Protection Agency ("EPA")], in

---

**2.** The Corps Chief of Engineers and his authorized representatives are authorized to issue permits on behalf of the Secretary of the Army under 33 C.F.R. § 325.8(a). District engineers are specifically authorized to issue or deny CWA § 404 permits under 33 C.F.R. § 325.8(b). Certain types of applications are required to be referred by the district engineer to the division engineer, who is then authorized to issue or deny the permits. 33 C.F.R. § 325.8(b), (c).

**3.** The term "wetlands" is defined at 33 C.F.R. § 328.3(b).

conjunction with the Secretary [of the Army]...." 33 U.S.C. § 1344(b)(1). The EPA guidelines are published at 40 C.F.R. Part 230. The Corps' regulations that govern discharge permits under § 1344 are published at 33 C.F.R. Parts 320 through 330. Discharge permits may be issued as "individual permits", or as "general permits". 33 C.F.R. § 320.2(c); 33 U.S.C. § 1344(e)(1) (authorizing general permits).

Individual permits are those

issued following a case-by-case evaluation of a specific project involving the proposed discharge(s) in accordance with the procedures of [33 C.F.R. Part 323] and 33 CFR Part 325 and a determination that the proposed discharge is in the public interest pursuant to 33 CFR Part 320.

33 C.F.R. § 323.2(g). The procedures for obtaining an individual permit are set forth in 33 C.F.R. Part 325, and include submission of site-specific documentation, notice to the public, opportunity for public comment and a hearing, and a formal written determination by the Corps to grant or deny the permit, which must be published.

General permits are those

issued on a nationwide or regional basis for a category or categories of activities when:

(1) Those activities are substantially similar in nature and cause only minimal individual and cumulative environmental impacts; or

(2) The general permit would result in avoiding unnecessary duplication of regulatory control exercised by another Federal, state, or local agency provided it has been determined that the environmental consequences of the action are individually and cumulatively minimal.

33 C.F.R. § 323.2(h); *see also* 33 U.S.C. § 1344(e)(1). A number of general permits have been issued by the Corps on a nationwide basis, and are published at 33 C.F.R. § 330.5(a). Nationwide permits are "designed to allow certain activities to occur with little, if any delay or paperwork." 33 C.F.R. § 330.1. Prior to issuance of nationwide permits, the Corps must publish information about the proposed permits in the Federal Register, with notice that public comments are sought, and it must provide the opportunity for a public hearing. 33 C.F.R. § 330.4.

At issue in this case is Nationwide Permit 26, published at 33 C.F.R. 330.5(a)(26). That permit allows

[d]ischarges of dredged or fill material into [wetlands that constitute waters of the United States] except those which cause the loss or substantial adverse modification of 10 acres or more of such waters of the United States, including wetlands. For discharges which cause the loss or substantial adverse modification of 1 to 10 acres of such waters, including wetlands, notification to the [Corps] district engineer is required in accordance with § 330.7 of this Part. (Section 404).

33 C.F.R. 330.5(a)(26). General permittees under Nationwide Permit 26 must obtain water quality certifications from the state government. 33 U.S.C. § 1341(a)(1); 33 C.F.R. § 330.9(a), (b)(3).

The notification procedures of 33 C.F.R. § 330.7 dictate that a "general permittee" under Nationwide Permit 26 who seeks to fill between 1 and 10 acres of wetlands

shall not begin discharges ... (1) Until notified by the district engineer that the work may proceed under the nationwide permit with any special conditions imposed by the district or division engineer; or (2) If notified by the district or division engineer that an individual permit may be required; or (3) Unless 20 days have passed from receipt of the notification by the district engineer and no notice has been received from the district or division engineer.

33 C.F.R. § 330.7(a). After a Nationwide Permit 26 pre-discharge notification is received, the Corps district engineer "will promptly review the general permittee's notification to determine" whether: (i) the proposed activity is one that has been previously identified as being of particular interest to various state and federal agencies; or (ii) the proposed activity is one that has not been previously identified as being of particular interest to various state and

federal agencies, but the district engineer believes that it may be of importance. 33 C.F.R. § 330.7(c)(1). If the district engineer determines that neither (i) or (ii) is applicable, he or she may "determine if an activity complies with the terms and conditions of a nationwide permit." 33 C.F.R. § 330.5(c)(1); *see also* 33 C.F.R. § 320.-1(a)(6) (district engineers authorized to "issue formal determinations concerning the applicability of ... general permits...."). Decisions by a district engineer pursuant to his or her authority to determine the applicability of general (including nationwide) permits "shall constitute a Corps final agency action." 33 C.F.R. § 320.1(a)(6).

If the district engineer determines that either of the conditions of § 330.7(c)(i) or (ii) is applicable, he or she "will promptly forward the notification to the division engineer and the head and appropriate staff officials of those agencies" so that they may express their views as to whether an individual permit should be required. *Id.* The division engineer must then review the 33 C.F.R. § 330.7(c)(1) notifications from the district engineer, and will require an individual permit when the proposed activity either does not comply with the terms of Nationwide Permit 26, or does not meet the definition of a general permit. 33 C.F.R. § 330.7(d). This will occur when the division engineer determines that proposed discharges under Nationwide Permit 26 would "have more than minimal adverse environmental effects on the aquatic environment when viewed either cumulatively or separately." *Id.* After the division engineer has made a determination, he is required to "notify the district engineer, who will immediately notify the general permittee of the division engineer's decision." *Id.*

Although the nationwide discharge permits generally apply to all activities that meet the terms and conditions in the permits, 33 C.F.R. § 330.8 vests discretionary authority in the division engineer to modify ... or to override nationwide permits by requiring individual permit applications on a case-by-case basis, for a category of activities, or in specific geographic areas. Discretionary authority will be based on concerns for the aquatic

environment as expressed in the guidelines published by EPA....

33 C.F.R. § 330.8.

In addition to discretion to modify or suspend nationwide permits on an "activity specific" or "geographic area" basis, see 33 C.F.R. § 330.8(a) and (b), the division engineer may also suspend a nationwide permit in individual cases and require an individual permit application "where additional individual or regional conditioning may not be sufficient to address concerns for the aquatic environment or where there is not sufficient time to develop ... conditions under paragraphs (a) and (b)...." 33 C.F.R. § 330.8(c)(1). When this discretionary authority is invoked, "[t]he district engineer will evaluate the [individual permit] application and will either issue or deny a permit." *Id.*

### B. *Statutory Basis for Subject Matter Jurisdiction*

■ In its complaint, Industrial alleges the existence of subject matter jurisdiction pursuant to 28 U.S.C. § 1346, which provides jurisdiction to hear cases or controversies in which the United States is a defendant, and pursuant to 28 U.S.C. § 1331, which provides jurisdiction to hear cases or controversies arising under federal law. The first asserted basis for subject matter jurisdiction is clearly untenable. Section 1346 has been construed to authorize jurisdiction only in those cases in which monetary relief is sought. *Richardson v. Morris*, 409 U.S. 464, 93 S.Ct. 629, 34 L.Ed.2d 647 (1973).

Section 1331, the federal question statute, does not in itself abrogate the United States' sovereign immunity. *Voluntary Purchasing Groups, Inc. v. Reilly*, 889 F.2d 1380, 1385 (5th Cir.1989); *National Ass'n of Counties v. Baker*, 842 F.2d 369, 372 (D.C.Cir.1988) ("We begin our analysis by determining whether any other federal statute provides a waiver of sovereign immunity for the type of relief sought"), *cert. denied*, 488 U.S. 1005, 109 S.Ct. 784, 102 L.Ed.2d 775 (1989). Therefore, the second asserted basis for subject matter jurisdic-

tion, federal question jurisdiction, is dependent on the existence of a statutory right to challenge the Corps' action. *Voluntary Purchasing,* 889 F.2d at 1385.

### C. *Judicial Review of Agency Action*

In its brief in opposition to the Corps' motion, Industrial asserts that the Corps' refusal to issue a notice to proceed under Nationwide Permit 26 and its decision to require an individual permit "is subject to judicial review under both the [Administrative Procedures Act ("APA")] and the CWA." Brief in Opposition at 10 (point heading). Industrial has not cited, nor has the Court found, any provision of the CWA that expressly provides for a right to judicial review of the agency action in issue in this case. Compare 33 U.S.C. § 1319(g)(8) (expressly granting judicial review of assessment of civil administrative penalty). The Court therefore interprets Industrial's assertion that the Corps' action is subject to review under the CWA as an argument that judicial review under the APA *is not precluded by* the CWA. *See* 5 U.S.C. § 701(a)(1) (APA does not authorize judicial review if review is precluded by statute). Hence, the Court must determine whether review is available under the APA.

The APA "provides a waiver of sovereign immunity by the United States from suits to review agency action and sets forth the remedies which are available in such suits." *Fairview Tp. v. United States Environmental Protection Agency,* 773 F.2d 517, 527 n. 19 (3d Cir.1985). Section 10(a) of the APA provides:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

5 U.S.C. § 702. "Agency action" is defined in 5 U.S.C. § 551(13) to "include[] the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act". When the challenged "agency action" is not expressly reviewable by statute, it is reviewable under 5 U.S.C. § 704 only if it is "final." 5 U.S.C. § 704 ("Agency action made

reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review.").

The Supreme Court has on a number of occasions interpreted the "finality" requirement, and has identified a number of factors that must be considered. *See, e.g., Bell v. New Jersey,* 461 U.S. 773, 103 S.Ct. 2187, 76 L.Ed.2d 312 (1983); *FTC v. Standard Oil Co.,* 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980); *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). It has generally interpreted finality "in a pragmatic way." *Abbott Laboratories,* 387 U.S. at 149, 87 S.Ct. at 1515. In *Solar Turbines, Inc. v. Seif,* 879 F.2d 1073 (3d Cir.1989), the Third Circuit synthesized the Supreme Court's decisions into five factors that must be weighed to determine whether agency action is sufficiently "ripe" so that it is "final" and judicially reviewable:

The factors to be considered in assessing finality are: First, does the agency action represent the definitive position of the agency? Second, does the agency pronouncement have the status of law, so that immediate compliance is expected? Third, does the agency action have an immediate impact on the daily operations of the plaintiff? Fourth, is the dispute over a pure question of law, without the need for factual development? Finally, will a preenforcement challenge speed enforcement of the relevant act?

*Id.* at 1080. Consideration of these factors ensures that judicial review is not premature, and will not "disrupt the administrative process." *Bell,* 461 U.S. at 779, 103 S.Ct. at 2191.

### D. *Is Colonel Danielson's Decision to Require an Individual Permit Application Subject to Judicial Review?*

The Corps asserts that this Court may not review Colonel Danielson's decision to require plaintiff to obtain an individual discharge permit. Industrial claims that its proposed filling of 2.5 acres of wetlands falls within the terms of Nationwide Permit 26, and that the Corps' denial of a notice to proceed under that general permit consti-

tutes "final agency action" subject to judicial review. To determine whether Colonel Danielson's decision was "final agency action" requires close analysis of the nature of that "action".

■ First, despite Industrial's characterization, the Corps did not "den[y] plaintiff's application for a Nationwide Permit." Plaintiff's Brief in Opposition at 11. Nationwide Permit 26 was "granted" years ago when promulgated and formally adopted after a public hearing and opportunity for public comment. Industrial did not "apply" for Nationwide Permit 26, but rather sought authorization to proceed under the already-existing permit.

Second, the Corps has not in any way determined whether Industrial may carry out its proposed filling of 2.5 acres of wetlands. It has, rather, only invoked its discretionary authority to require more extensive documentation before determining whether Industrial may carry out its plan, by requiring that an individual permit be obtained, rather than allowing Industrial to proceed under Nationwide Permit 26.[4] Industrial's individual permit application is currently under review by the Corps.[5]

Last, the Corps has not determined that Nationwide Permit 26 is "inapplicable". It has instead "suspend[ed] use of the nationwide permit", pursuant to 33 C.F.R. § 330.-8(c)(1).

To determine whether the challenged agency action was "final", the Court must apply the five *Solar Turbines* factors. First, the Court must assess whether the Corps' action represents "the definitive position of the agency". *Solar Turbines*, 879 F.2d at 1080. Although the Corps has taken the position that an individual permit must be obtained, this position can in no

real sense be described as "definitive". No merits-based decision has been made that Industrial may not fill the proposed 2.45 acres of wetlands. Importantly, the Corps' decision to suspend use of the nationwide permit and require an individual permit can be reversed by the Corps *sua sponte* "if at any time the reason for taking discretionary authority is satisfied." 33 C.F.R. § 330.8(c)(1). Thus, the decision to suspend use of the nationwide permit before any rights have been established under it is not necessarily the Corps' "last word" on the subject. This strongly indicates that the decision is more interlocutory than final in nature. By contrast, once a nationwide permit is found applicable and the permittee's right to proceed under the nationwide permit has been established, the nationwide permit may not be suspended without compliance with the notice and hearing procedures set forth in 33 C.F.R. § 325.7. At most, the Corps has made an administrative decision, under discretion clearly authorized by the regulations, as to the procedures that must be followed by Industrial to obtain a definitive ruling on the merits of its proposed discharge. Thus, the first factor weighs against a finding of finality.

Next, the Court must consider whether the Corps' decision "has the status of law, so that immediate compliance is expected." *Solar Turbines*, 879 F.2d at 1080. This factor also weighs against a finding of finality. The Corps has not directed Industrial to engage in any act, nor has it forbid Industrial from engaging in any act. It has merely determined that Industrial must obtain an individual permit before it can discharge fill into its wetlands. Industrial is free to abandon its plans, or to comply with the individual permit application pro-

---

4. The district engineer invoked the discretionary authority vested in the division engineer by 33 C.F.R. § 330.8. See Danielson Letter dated August 6, 1991, annexed as Exhibit F to the Coakley Certification. Although nothing in the record explicitly indicates that Colonel Danielson was acting under authority delegated to him by the division engineer, Industrial has not alleged, nor does it argue, that Danielson exceeded his authority in invoking the division engineer's discretionary powers. Therefore, the Court need not address whether Danielson prop-

erly invoked the division engineer's discretionary powers of 33 C.F.R. § 330.8, but can assume that such authorization existed and was proper.

5. Although Industrial has indicated in its submissions that it believes a Corps decision on its individual permit application has been unduly delayed, the present action does not challenge the Corps' failure to act on that application, but instead challenges only the decision to require an individual permit.

cedures. If Industrial takes no further action, it is in no danger of being found in violation of law, or subject to any administrative, civil or criminal penalties. Thus, it cannot be said that "immediate compliance is expected". *Solar Turbines,* 879 F.2d at 1080.

The third *Solar Turbines* factor—whether the agency action has "an immediate impact on the operations of the plaintiff"— also weighs against a finding of finality. Industrial contends that, as a result of the Corps' action, "the development of the project has come to a complete halt." Brief in Opposition at 15. Industrial, however, has mischaracterized the cause and effect relationship between the Corps' action and its inability to proceed with its project. The Corps' decision places no obligations on Industrial additional to those already imposed by the CWA. Though Industrial could be penalized if it went forward with its plan to fill the wetlands site, this threat does not result from the Corps' decision as to the *kind* of permit that must be obtained, but from the CWA statutory requirement *that* a permit must be obtained.

The CWA requires that a party obtain a permit before discharging fill into waters of the United States. 33 U.S.C. § 1311. Industrial has not yet obtained a permit, nor has it been denied a permit. The Corps was clearly within its statutory authority when it promulgated regulations that retained Corps discretion to suspend use of a nationwide permit and require an individual permit when it found that such action was necessary to protect an aquatic environment. Nothing in the CWA confers a vested right to discharge fill into waters of the United States without an individual permit. It cannot therefore be said that the Corps' decision to require an individual permit is the cause of any hardship to Industrial of a kind that weighs in favor of a finding of finality. Industrial's claimed hardship is essentially no more than an argument that "it prefers to move ahead with the project and [the individual permit requirement] makes it more difficult...." *CEC Energy Co. v. Public Service Comm'n of the Virgin Islands,* 891 F.2d 1107, 1111 (3d Cir.

1989). Though the burden of completing the individual permit application process could arguably be described as "substantial, it is different in kind and legal effect from the burdens attending what heretofore has been considered to be final agency action." *FTC v. Standard Oil Co. of California,* 449 U.S. 232, 242, 101 S.Ct. 488, 494, 66 L.Ed.2d 416 (1980).

*Solar Turbines* dictates that the Court next consider whether the dispute involves "a pure question of law, without the need for factual development." 879 F.2d at 1080. Industrial seeks review of an exercise of the Corps' discretion under a broadly-defined standard, i.e., whether the nationwide permit with additional conditions is "sufficient to address concerns for the aquatic environment." 33 C.F.R. § 330.-8(c)(1). This subjective determination is necessarily fact intensive and dependent, and can hardly be characterized as a "pure question of law." In view of the discretionary nature of the challenged Corps action, the record as it stands is insufficiently developed to provide a basis for meaningful judicial review.

Last, the Court must determine whether immediate judicial review would speed enforcement of the relevant act. *Solar Turbines,* 879 F.2d at 1080. The Court concludes that it would not. A major purpose of the CWA is to protect the integrity of the nation's waters. Industrial seeks review of the Corps' decision to require additional documentation of Industrial's plans before it would decide whether the planned discharge will adversely affect those waters. Given the need for more specific findings of fact to facilitate meaningful review if the Court were to exercise jurisdiction, an outright reversal of the Corps' decision would not be a possibility. Moreover, the challenged action is discretionary. In the best case from Industrial's perspective, the Court might find that the Corps abused its discretion, and remand the case for reconsideration. Thus, judicial review would do little to speed enforcement of the act. It is more likely that judicial review at this time would "interfere[ ] with the proper functioning of the agency and [ ] burden

the courts." *Standard Oil,* 449 U.S. at 242, 101 S.Ct. at 494. In addition, because Industrial's individual permit application is currently under review by the Corps, the possibility exists that a decision on that application favorable to Industrial would moot the need for review of the challenged Corps action. Moreover, the possibility remains that the Corps' suspension of Nationwide Permit 26 could be removed. *See* 33 C.F.R. § 330.8(c)(1). Therefore, the Court believes that "[j]udicial intervention into the agency process [would] deny the agency an opportunity to correct its own mistakes and to apply its expertise.... [and would] also lead[ ] to piecemeal review which at the least is inefficient and upon completion of the agency process might prove to have been unnecessary." *Standard Oil,* 449 U.S. at 242, 101 S.Ct. at 494.

Hence, the Court concludes that the challenged agency action is not final, and is not subject to judicial review pursuant to 5 U.S.C. § 704. For the reasons set forth above, the Court also finds unpersuasive the reasoning in *Riverside Irrigation District v. Stipo,* 658 F.2d 762 (10th Cir.1981), a case in which the court held that jurisdiction existed to review an Army Corps of Engineers decision that required a party to comply with individual conditions imposed on Nationwide Permit 26 or obtain an individual permit.

■ One last argument must be addressed. Industrial claims that 33 C.F.R. § 320.1(a)(6) "mandate[s] a finding that the decision of the Corps constitutes final agency action." Brief in Opposition at 12. That regulation provides:

> The Corps has authorized its district engineers to issue formal determinations concerning ... the applicability of general permits.... A determination pursu-

ant to this authorization shall constitute a Corps final agency action.

33 C.F.R. § 320.1(a)(6).

Industrial's "plain language" argument was rejected in *Lotz Realty Co. v. United States,* 757 F.Supp. 692, 697 (E.D.Va.1990). The *Lotz* court determined that the regulation could not transform an otherwise unfinal action into a final one. *Id.* ("this regulation applies only when the determination at issue is by nature the final agency action in a particular matter"). Thus, implicit in the *Lotz* court's decision was the conclusion that the agency exceeded the scope of its statutory authority to the extent it purported to create federal court jurisdiction.

This Court does not reach the issue of the validity of § 320.1(a)(6), because it concludes that, even when applied literally, that regulation does not control the agency determination at issue in this case. By its plain terms, § 320.1(a)(6) applies only to "formal determinations ... concerning ... the *applicability* of general permits." (emphasis added). The Corps in this case made no "formal determination" as to the "applicability" of Nationwide Permit 26. It did not determine that Nationwide Permit 26 was "applicable" to Industrial's proposed discharge, nor did it determine that Nationwide Permit 26 was "inapplicable" to Industrial's proposed discharge.

The only pre-condition to the "applicability" of Nationwide Permit 26 for discharges into specified waters is that the proposed discharge will not cause the loss or substantial adverse modification of more than 10 acres of such waters. 33 C.F.R. § 330.-5(a)(26). A determination of the "applicability" or "inapplicability" of Nationwide Permit 26 to a proposed discharge therefore hinges on the *area* of specified United States waters that the Corps finds will be lost or adversely modified to a substantial extent.[6] In this case, the Corps never for-

---

**6.** That determination, however, cannot always be made simply on the basis of a verification of the proposed area of fill in the pre-discharge notification. Congress recognized that discharges into waters may have effects extending past the immediate location of the discharge: "[w]ater moves in hydrologic cycles and it is essential that discharge of pollutants be controlled at the source." *Riverside Bayview*

*Homes,* 474 U.S. at 133, 106 S.Ct. at 462 (quoting S.Rep. No. 92–414 p. 77 (1972), U.S.Code Cong. & Admin.News 1972, pp. 3668, 3742). Thus, for example, it is not a foregone conclusion that Industrial's proposed discharge of fill into 2.45 acres of wetlands would result in the loss or adverse modification of only 2.45 acres of United States waters.

mally determined what area of United States waters would be lost or adversely modified by Industrial's proposed discharge of fill, but instead "suspended use" of the permit under the discretionary authority of 33 C.F.R. § 330.8(c)(1). "Suspension of use" of a nationwide permit differs materially from a finding that the permit is "inapplicable." An applicability determination involves consideration of the specific criteria required by the permit, and findings whether those criteria have been met. "Suspension of use," by contrast, is an abrogation of the nationwide permit, rendering it ineffective, with no need to consider the permit's required criteria. Because the Corps "suspended use" of Nationwide Permit 26, it never determined one way or another whether Nationwide Permit 26 was "applicable." Therefore, 33 C.F.R. § 320.1(a)(6) has no bearing on the outcome of this motion.[7]

### CONCLUSION

For the reasons stated above, the Corps' motion to dismiss Industrial's complaint for lack of subject matter jurisdiction will be granted.

---

**7.** This reading of 33 C.F.R. § 320.1(a)(6) is consonant with the *Lotz* court's determination that the regulation authorizes judicial review only in those cases where the Corps determines that the nationwide permit applies, and no individual permit is needed. *Lotz,* 757 F.Supp. at 697. In those cases, persons affected by Corps decisions to allow proposed discharges to proceed can challenge the determinations in court.