AMOCO OIL CO., Plaintiff,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,
Defendant.

Civil Action No. 96 N 1037.

United States District Court
D. Colorado.

March 28, 1997.

John Fognani, Christopher L. Thorne, Thomas M. Crimmins, III, Gibson, Dunn & Crutcher, Denver, CO, for Plaintiff/Petitioner.

Linda A. Surbaugh, Assistant U.S. Attorney, Denver, CO, David A. Carson, United States Department of Justice Environment

and Natural Resources Division, Denver, CO, Charles Figur, United States Environmental Protection Agency, Region VIII—ENF–L, Denver, CO, for Defendant/Respondent.

## MEMORANDUM OPINION
## AND ORDER

NOTTINGHAM, Judge.

This is a challenge by Amoco Oil Co. ("Amoco") to an order of the Environmental Protection Agency seeking corrective action under section 3008(h) of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C.A. § 6928(h) (West 1995). The matter is before the court on "EPA's Motion to Dismiss" filed November 1, 1996. Amoco alleges jurisdiction based on 28 U.S.C.A. § 1331 (West 1993), 28 U.S.C.A. §§ 2201, 2202 (West 1994), and 5 U.S.C.A. §§ 701–706 (West 1996). The EPA contends that this court lacks subject matter jurisdiction.

## FACTS

Because resolution of this motion does not require a factual inquiry, I include only a brief summary of the factual background as alleged by the EPA. (Mem. in Supp. of EPA's Mot. to Dismiss [filed Nov. 1, 1996] [hereinafter "EPA's Br."].) Amoco operated a refinery on the North Platte River in Casper, Wyoming, from approximately 1913 until 1991. The refinery processed crude oil into various grades of gasoline, diesel fuel, jet fuel, fuel oil, naptha solvent, propane, and lube oils. In 1990, the EPA initiated a facility assessment under RCRA and concluded that hazardous waste had been released into the soil and groundwater at the refinery site. On November 18, 1994, the EPA issued a RCRA section 3008(h) corrective action order. After a hearing and comment, the EPA regional administrator issued, on February 23, 1996, his changes to the initial corrective action order and his approval of the order as modified. On April 1, 1996, the EPA issued the final order which requires Amoco to perform several evaluative tasks at the refinery site. Pursuant to the final order, Amoco may ultimately be required to implement corrective measures.

On April 30, 1996, Amoco filed a complaint in this court challenging the EPA's orders and the administrative process through which they issued. (Compl. [filed Apr. 30, 1996].) On November 1, 1996, the EPA moved to dismiss Amoco's complaint under rule 12(b)(1) of the Federal Rules of Civil Procedure. (EPA's Mot. to Dismiss [filed Nov. 1, 1996].) The EPA argues that this court lacks subject matter jurisdiction to review a RCRA administrative order before the EPA has sought to enforce it. (EPA's Br.)

## ANALYSIS

### 1. Subject Matter Jurisdiction to Review Administrative Order

Amoco asserts jurisdiction under the general federal-question statute, 28 U.S.C.A. § 1331, the Declaratory Judgment Act, 28 U.S.C.A. §§ 2201, 2202, and the Administrative Procedure Act ("APA"), 5 U.S.C.A. §§ 701 to 706. Sovereign immunity protects the United States from suit unless it consents to be sued, and section 1331 does not constitute a waiver of the United States' sovereign immunity. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980); *Eagle–Picher Indus., Inc. v. United States,* 901 F.2d 1530, 1532 (10th Cir.1990) ("[J]urisdiction over a suit against the United States cannot be based upon 28 U.S.C. § 1331, because that statute does not waive the [G]overnment's sovereign immunity."). Similarly, the Declaratory Judgment Act does not provide an independent basis of jurisdiction. *Amalgamated Sugar Co. v. Bergland,* 664 F.2d 818, 822 (10th Cir.1981) ("It is settled that 28 U.S.C. § 2201 does not confer jurisdiction on a federal court where none otherwise exists."). For any party "adversely affected or aggrieved by agency action within the meaning of a relevant statute" the APA provides a cause of action. 5 U.S.C.A. § 702 (1996). To the extent that a statute precludes judicial review, however, the APA withdraws that cause of action. 5 U.S.C.A. § 701(a)(1). The EPA argues that because RCRA precludes pre-enforcement review of corrective action orders, the APA provides Amoco with no cause of action and, therefore, this court lacks subject matter jurisdiction.

Because Congress does not always explicitly state whether and to what extent

judicial review of administrative actions is available, courts must make such determinations. The Supreme Court has stated that the " 'generous review provisions' " of the APA must be given a " 'hospitable' " interpretation. *Abbott Lab. v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967) (quoting *Shaughnessy v. Pedreiro,* 349 U.S. 48, 51, 75 S.Ct. 591, 594, 99 L.Ed. 868 [1955]). Although the Court originally described the showing required to demonstrate legislative intent to restrict judicial review as "clear and convincing," *Abbott Labs.,* 387 U.S. at 141, 87 S.Ct. at 1511, the Court has since clarified that, in considering preclusion of judicial review, "clear and convincing" is not to be applied as a strict evidentiary test. *Block v. Community Nutrition Inst.,* 467 U.S. 340, 351, 104 S.Ct. 2450, 2456, 81 L.Ed.2d 270 (1984). Rather, the presumption favoring judicial review may be overcome by finding that congressional intent to restrict judicial review is " 'fairly discernable in the statutory scheme.' " *Id.,* 467 U.S. at 351, 104 S.Ct. at 2456 (quoting *Data Processing Serv. v. Camp,* 397 U.S. 150, 157, 90 S.Ct. 827, 832, 25 L.Ed.2d 184 [1970]). In determining whether and to what extent a statute precludes judicial review, a court considers "not only [the] express language [of the statute], but also ... the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." *Block,* 467 U.S. at 345, 104 S.Ct. at 2453–54. A court may also consider congressional acquiescence in "contemporaneous judicial construction[s] barring review." *Id.* at 349, 104 S.Ct. at 2455.

### a. RCRA

■ Congress enacted RCRA in 1976 to address waste disposal in general and hazardous waste in particular. *United States v. Valentine,* 885 F.Supp. 1506, 1511 (D.Wyo. 1995) (citing *United States v. Aceto Agric. Chems. Corp.,* 872 F.2d 1373 [8th Cir.1989]); H.R.Rep. No. 94–1491 Part I, 94th Cong., 2d Sess. *reprinted in* 1976 U.S.C.C.A.N. 6238, 6239–42. Congress characterized RCRA as a "prospective cradle-to-grave regulatory regime governing the movement of hazardous waste in our society." H.R.Rep. No. 1016, Part I, 96th Cong.2d Sess. 17, *reprinted in* 1980 U.S.C.C.A.N. 6119, 6120. Specifically,

section 3008(h) of RCRA provides two enforcement options when the EPA determines that there has been a release of hazardous waste into the environment from certain RCRA regulated facilities. 42 U.S.C.A. § 6928(h)(1). The EPA may (1) "issue an order requiring corrective action," or (2) "commence a civil action ... for appropriate relief, including a temporary or permanent injunction." 42 U.S.C.A. § 6928(h)(1). Violation of a section 3008(h) order may subject the violator to civil or administrative penalties of up to $25,000 per day. 42 U.S.C.A. § 6928(g), (h)(2). To obtain civil penalties, the EPA must institute a civil action. 42 U.S.C.A. § 6928(g). If the EPA seeks to impose administrative penalties, the violator is entitled to an administrative hearing before such penalties may be imposed. *See* 40 C.F.R. pts. 22, 24.

The EPA argues that, because the statutory scheme of section 3008(h) provides the agency with the option of either issuing corrective action orders *or* instituting civil actions, Congress intended to preclude judicial review of corrective action orders unless and until the EPA sought judicial enforcement thereof. According to the EPA, the RCRA statutory scheme reflects legislative objectives which are inconsistent with pre-enforcement judicial review.

As an initial matter I note that no provision of RCRA expressly addresses pre-enforcement review of section 3008(h) orders. Were the statute to provide express direction, my inquiry would proceed no further. *Cf. Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984) (stating that the courts' are bound by clear expressions of congressional intent); *Solar Turbines Inc. v. Seif,* 879 F.2d 1073, 1077 (3d Cir.1989) (concluding that because the Clean Air Act "explicitly provides for review of certain actions and explicitly denies review for everything else, [the court] cannot look elsewhere for authority" to determine the availability of judicial review). I therefore consider the factors enumerated in *Block* to determine whether there is a fairly discernable intent to preclude judicial review.

### i. Legislative History

According to the EPA, Congress's intent in providing the alternatives of corrective action

orders, which it claims provide no resort to the judicial process, and civil actions, which obviously involve the judicial system, was to afford the EPA enforcement flexibility. RCRA's statutory framework is designed to allow the EPA to achieve "expeditious, voluntary compliance where possible" while still affording it the ability to resort to judicial action where necessary. (EPA's Br. at 14.) Thus, reasons the EPA, because "[p]re[-]enforcement review of section 3008(h) orders would intrude on the procedural sequence and enforcement options created by Congress for obtaining compliance with RCRA," pre-enforcement judicial review should not be available. (Id.) In citing the legislative history to support its argument, the EPA highlights the distinction between the enforcement mechanisms provided under section 3008(h). The EPA quotes selectively from the legislative history to make its point: "'[t]he use of orders . . . overcomes the slowness of the permit process without sacrificing the need for interaction between the agency and the owner or operator in developing appropriate corrective action measures.'" (EPA's Br. at 18 [quoting H.R.Conf.Rep. No. 1133, 98th Cong., 2d Sess. reprinted in 1984 U.S.C.C.A.N. 5576, 5682].) The inference the EPA apparently seeks to create is that, because compliance orders were designed to avoid the slowness of the permit process, Congress also intended that compliance orders would avoid the potential slowness of civil litigation. What the EPA omits from its quotation of the legislative history is the language: "and civil suits." H.R.Conf.Rep. No. 1133, 98th Cong., 2d Sess. reprinted in 1984 U.S.C.C.A.N. 5682. Thus, reading the legislative history in full indicates that Congress created both section 3008(h) options as alternatives to the "slowness of the permit process" and did not distinguish between corrective action orders and civil suits in terms of their speed. Because Congress did not distinguish the section 3008(h) enforcement options, the legislative history alone does not reveal a fairly discernable intent to preclude pre-enforcement judicial review of corrective

action orders. Considering the legislative history in conjunction with the statutory framework and objectives, however, such an intent becomes apparent.

### ii. Statutory Structure & Objectives

Although the legislative history does not draw the contrast the EPA suggests, the statute provides the EPA with a choice of enforcement mechanisms, suggesting that Congress intended for the EPA to have the choice to use or avoid the judicial process to obtain compliance. The EPA compares the RCRA enforcement scheme to those of the Clean Air Act ("CAA"), the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), and the Clean Water Act ("CWA") to illustrate that RCRA's statutory scheme and objectives reveal a fairly discernable intent to preclude judicial review. Making this comparison is apt, in part, because the RCRA legislative history indicates that Congress intended the enforcement schemes and objectives of these environmental regulatory statutes to complement each other as a means of protecting the environment. See H.R.Rep. No. 94–1491 Part I, 94th Cong., 2d Sess. reprinted in 1976 U.S.C.C.A.N. 6238, 6241–42 ("[RCRA] will . . . permit the environmental laws to function in a coordinated and effective way."). Although the enforcement scheme of the CAA is similar to RCRA, CERCLA, and CWA, the CAA also includes an express and detailed provision explaining what CAA actions may be judicially reviewed. See 42 U.S.C.A. § 7607(b)(1) (West 1995). Thus, comparison with CAA cases addressing the availability of pre-enforcement review is not particularly helpful. See Solar Turbines, Inc., 879 F.2d at 1077. CERCLA, cases interpreting CERCLA, CWA, and cases interpreting CWA provide a better comparison and indicate that Congress's intent to preclude pre-enforcement review of RCRA section 3008(h) corrective action orders is fairly discernable.

In 1986 Congress amended CERCLA to expressly preclude pre-enforcement judicial review of administrative orders, codifying existing case law which barred pre-enforcement judicial review.* See Schalk v. Reilly, 900

---

* Contrary to Amoco's argument, I draw no negative inference from Congress's omission of such an amendment to RCRA. I reach this conclusion based on: (1) the fact that Congress has not amended the CWA to expressly preclude judicial

F.2d 1091, 1096 (7th Cir.1990); *Voluntary Purchasing Groups, Inc. v. Reilly,* 889 F.2d 1380, 1387–88 (5th Cir.1989). Thus, like the CAA and cases interpreting. that statute, post–1986 CERCLA and cases interpreting it do not offer a particularly helpful comparison. Prior to Congress's express rejection of pre-enforcement judicial review under CERCLA, however, various courts concluded that the statutory scheme and purpose of CERCLA enforcement provisions indicated that pre-enforcement judicial review was not available for administrative orders. *See, e.g., Lone Pine Steering Comm. v. United States EPA,* 777 F.2d 882, 886–87 (3d Cir.1985); *J.V. Peters & Co., Inc. v. Administrator, EPA,* 767 F.2d 263,.264 (6th Cir.1985); *B.R. MacKay & Sons, Inc. v. United States,* 633 F.Supp. 1290, 1297 (D.Utah 1986). The *Lone Pine Steering Committee* court stated:

> The statutory approach to the problem of hazardous waste is inconsistent with the delay that would accompany pre-enforcement review. Thus, although not explicitly stated in the statute, we find in [CERCLA] an implicit disapproval of pre-enforcement judicial review. That policy decision is not limited to emergency situations but applies to remedial actions as well.

*Id.* at 886–87.

Those same considerations apply to RCRA. Congress designed the enforcement options of section 3008(h) of RCRA to enable the EPA to avoid the slowness of the permit process and determine how best to achieve compliance with RCRA. To allow judicial review of an administrative order before the EPA seeks to enforce that order would take away from the EPA the ability to avoid the judicial process and interfere with the regulatory scheme Congress established.

The CWA provides the best comparison from which this court can discern a legislative intent to preclude pre-enforcement judicial review. CWA has an enforcement mechanism similar in relevant respect to RCRA. Like section 3008(h), upon information that a violation of the CWA has occurred, the EPA can either (1) issue an order requiring compliance or (2) institute a civil action. 33 U.S.C.A. § 1319(a)(3) (West 1985). Both civil and administrative penalties may be imposed under the CWA. 33 U.S.C.A. § 1319(d), (g) (West Supp.1996). Because the CWA statutory framework provides the EPA with options to obtain compliance, "Congress has impliedly precluded judicial review of a compliance order except in an enforcement proceeding." *Hoffman Group, Inc. v. EPA,* 902 F.2d 567, 569 (7th Cir.1990) (rejecting pre-enforcement review of administrative order); *accord Laguna Gatuna, Inc. v. Browner,* 58 F.3d 564, 565 (10th Cir. 1995) (following law of other circuits rejecting pre-enforcement review of an EPA compliance orders under the CWA); *Southern Pines Assocs. v. United States,* 912 F.2d 713, 716 (4th Cir.1990) (concluding, based on statutory framework of CWA and comparison with CAA and CERCLA, that Congress intended to preclude pre-enforcement judicial review of compliance orders). As the Fourth Circuit stated in rejecting the availability of pre-enforcement judicial review of administrative orders under the CWA, "[t]he structure of these environmental statutes indicates that Congress intended to allow the EPA to act to address environmental problems quickly and without becoming immediately entangled in litigation." *Southern Pines Assocs.,* 912 F.2d at 716. The structure of RCRA is comparable to the CWA, as is Congress's objective of creating an enforcement scheme which allows the EPA to act rapidly to address hazardous waste problems.

I conclude that a congressional intent to preclude pre-enforcement judicial review of administrative corrective orders is fairly discernable in the statutory scheme. When viewed together, the legislative history, the structure and objectives of section 3008(h), and the nature of the administrative action, all lead me to conclude that congressional intent to preclude pre-enforcement judicial review of corrective action orders is fairly discernable. Because I conclude that the

review; and (2) the fact that judicial interpretations of the CWA have generally found a fairly discernable congressional intent to preclude judicial review, *see Block,* 467 U.S. at 349, 104 S.Ct. at 2455 (stating that whether congressional in-

tent to preclude judicial review is fairly discernable may, in part, be determined based on judicial treatment of statutory provisions and congressional acquiescence thereto).

statutory scheme does not provide for pre-enforcement review of section 3008(h) corrective action orders, I need not address the parties' arguments regarding whether the EPA's action constitutes a final decision. *See Abbott Labs.,* 387 U.S. at 148, 87 S.Ct. at 1515. I therefore conclude that this court lacks subject matter jurisdiction over Amoco's challenge to the EPA's corrective action order.

### b. Due Process

■ Amoco argues that construing RCRA to preclude pre-enforcement review of administrative orders violates principles of due process. (Amoco's Resp. at 17–19.) Amoco bases its argument on the possibility that it may incur administrative penalties for failing to comply. (Amoco's Resp. at 18 [citing penalties under section 6928(h)(2) ].) As an initial matter, RCRA does not require the EPA to pursue penalties; there is only a possibility that Amoco will incur them. If Amoco is to be subject to penalties pursuant to section 3008, however, the EPA is required to either (1) afford Amoco an administrative hearing pursuant to 40 C.F.R. part 22 or (2) institute a civil action. In either proceeding, Amoco would have the opportunity to raise all of the challenges to the administrative order it seeks to raise here. Amoco argues that, because fines accrue per day from the first day of the violation, precluding judicial review of the corrective action order contravenes its due-process rights because it will be forced to wait until the EPA pursues penalties to raise its objections to the corrective action order and the penalties. The *possibility* that Amoco may be subject to fines does not by itself violate due process principles and does not render RCRA unconstitutional. *See Union Elec. Co. v. EPA,* 593 F.2d 299, 305–06 (8th Cir.1979) (concluding that due process principles are not violated where imposition of penalties only a possibility). Moreover, any assessment of fines by the court involves judicial discretion. *See Valentine,* 885 F.Supp. at 1514–16 (indicating that penalties under RCRA involve judicial discretion). Judicial discretion in the imposition of penalties protects Amoco's due process rights. *See Wagner Seed Co. v. Daggett,* 800 F.2d 310, 316 (2d Cir.1986) ("[I]t is plain that there is no constitutional violation if the im-position of penalties is subject to judicial discretion."). *If* the EPA decides to pursue penalties for Amoco's non-compliance, Amoco will then have the opportunity to raise arguments, in an administrative proceeding and/or in court, objecting to the compliance order and the process by which it issued. Accordingly, I conclude that lack of pre-enforcement judicial review does not violate Amoco's due process rights and does not render section 3008(h) of RCRA constitutionally infirm.

### 2. Subject Matter Jurisdiction & Challenge to RCRA Regulations

■ Amoco argues that at the very least the court has jurisdiction over its ninth claim for relief which, according to Amoco, challenges the regulations issued pursuant to RCRA, 40 C.F.R. part 24, *as applied* to Amoco. (Amoco's Resp. at 25–26.) RCRA expressly provides for judicial review of final regulations. 42 U.S.C.A. § 6976 (West 1995). A challenge to a RCRA regulation may be filed only in the United States Court of Appeals for the District of Columbia. 42 U.S.C.A. § 6976(a)(1). Review of Amoco's complaint, however, reveals that Amoco's challenge is not to the regulations as applied to Amoco but rather a challenge to the regulations on their face. (*See* Compl. ¶¶ 84–86.) In its complaint, Amoco asserts that "Congress intended recipients of section 3008(h) Orders to be entitled to a full adjudicatory hearing...." (*Id.* ¶ 84.) According to Amoco, however, the "40 C.F.R. Part 24 hearing procedures do not provide recipients of Section 3008(h) orders with [ ] procedural protections" that comport with due process. (*Id.* ¶ 85.) Amoco claims that the EPA's decision is infirm because the EPA afforded Amoco "only the inadequate procedural protections of 40 C.F.R. Part 24." (*Id.* ¶ 86.) Because Amoco's claim challenges the regulations directly and does not claim that the EPA failed to provide it with the protections afforded by the regulations, I conclude that Amoco's challenge is to the regulations themselves. Thus, this court is without jurisdiction over Amoco's challenge to the regulations set out in 40 C.F.R. part 24. 42 U.S.C.A. § 6976.

### 3. Conclusion

Based on the foregoing, it is therefore

ORDERED that the motion to dismiss is GRANTED and this case is hereby DISMISSED for lack of subject matter jurisdiction.