**WHEELING-PITTSBURGH STEEL CORPORATION, Petitioner,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,
Respondent.**

**Civil Action No. 5:85–CV–124.**

United States District Court,
N.D. West Virginia,
Martinsburg Division.

April 24, 1997.

---

**13.** *Henry v. Greenville Airport Comm'n* 284 F.2d   631, 633 (4th Cir.1960).

William T. Fahey, Hinerman & Fahey, Weirton, WV, Kenneth S. Komoroski, Kenneth M. Argentieri, Kirkpatrick & Lockhart, Pittsburgh, PA, for Petitioner.

Patrick M. Flatley, Asst. U.S. Atty., Wheeling, WV, Catherine M. Rojko, U.S. Dept. of Justice, Environmental & Natural Resources Section, Washington, DC, for Respondent.

### MEMORANDUM OF OPINION AND ORDER

BROADWATER, District Judge.

This matter is currently before the Court on a petition for dispute resolution ("Petition") by Wheeling–Pittsburgh Steel Corporation ("WPSC") under a 1989 Consent Decree entered in this civil action. WPSC seeks a declaration that the Consent Decree deprives the United States Environmental Protection Agency ("EPA") of authority to issue an administrative order compelling "corrective action" to assess and propose clean up of contamination and conduct interim cleanup measures at WPSC's coke manufacturing plant ("Facility") in Follansbee, West Virginia. WPSC further seeks a declaration that issuance of the administrative order is otherwise precluded by law. The EPA has filed a motion to dismiss the Petition for lack of jurisdiction in opposition. As more fully set forth below, the Court **DENIES** the Petition because (1) the Consent Decree expressly reserves EPA's rights to take corrective action at the Facility and thus does not bar issuance of the administrative order as amended; and (2) any challenge to the administrative order on any other ground is precluded at this time. The Court, therefore, **GRANTS** the EPA's motion to dismiss.

### I. FACTUAL BACKGROUND

WPSC and EPA are parties to a Consent Decree entered by the Court on October 2, 1989 that relates to a surface impoundment at WPSC's Facility in Follansbee, West Virginia, being, as previously stated, a coke

manufacturing plant. The Consent Decree resulted from a dispute between the parties about whether the surface impoundment had been closed at the Facility prior to the effective date of the regulations implementing the Resource Conservation and Recovery Act, ("RCRA"), 42 U.S.C. § 6921 *et seq.* The dispute initially involved administrative proceedings and culminated with WPSC filing this action in 1985. Four years later, the Consent Decree was entered.

The Consent Decree sets forth WPSC's obligations for closing the surface impoundment, including a requirement to engage in soil sampling and ground water monitoring to verify that the surface impoundment will be closed without posing a harm to human health and the environment. Consent Decree, Sections V and VI. A final ground water monitoring plan was recently approved by EPA for implementation. The parties do not dispute that WPSC is complying with its obligations under the Consent Decree.

On September 27, 1996 EPA issued an Initial Administrative Order ("IAO") against WP § C pursuant to Section 3008(h) of RCRA, 42 U.S.C. § 6928(h). The IAO required WPSC to perform site-wide corrective action measures relating to the surface impoundment and other unrelated areas at its Facility in Follansbee. *In the Matter of Wheeling–Pittsburgh,* U.S. EPA Docket No. RCRA–III–080–CA. The EPA maintained that the releases of RCRA hazardous wastes and/or hazardous constituents leading to issuance of the IAO were identified in samples of groundwater taken recently at areas outside of the surface impoundment and at wells that were monitored outside of the requirements of the Consent Decree.

WPSC objected to the IAO on the basis that the surface impoundment was exclusively covered by the Consent Decree. WPSC then filed its Petition for dispute resolution under the Consent Decree to challenge the validity of the IAO. EPA amended the IAO on November 14, 1996 ("Amended IAO") to eliminate any requirement for WPSC to perform corrective action in connection with any releases relating to the surface impoundment. Accordingly, the Amended IAO only addresses releases unrelated to the surface impoundment. EPA then moved to dismiss WPSC's Petition.

The Amended IAO modifies the IAO to relieve WPSC of any obligation to perform corrective action necessary as a result of releases of hazardous wastes and/or hazardous constituents from the surface impoundment at the Facility that was the subject of earlier litigation. EPA broadly interprets Section 3008(h) of RCRA as authorizing EPA to issue orders requiring "corrective action" whenever EPA determines that there has been a release of hazardous wastes and/or hazardous constituents into the environment from other unrelated areas at the Facility authorized to operate under Section 3005(e) of RCRA, 42 U.S.C. § 6925(e), or also allows EPA to commence a civil action for appropriate relief, including injunctive relief.

WPSC argued at the hearing before this Court that the removal of the surface impoundment from Amended IAO effectively "doughnuted out" the original cause of the EPA's action, the surface impoundment, from the remaining part of the Facility by eliminating from consideration the original cause of the controversy and that EPA now seeks to order corrective actions at all surrounding areas of the Facility. EPA pointed out at the hearing that "facility" is broadly defined by federal environmental regulations. 40 C.F.R. § 260.10 defines "facility" as "(a)ll contiguous land, and structures, other appurtenances, and improvements on the land, used for treating, storing, or disposing of hazardous waste." EPA agreed that the surface impoundment, now "doughnuted out" of consideration by the Amended IAO, was indeed the "jurisdictional hook" that authorized the EPA to issue the orders pursuant to Section 3008(h) of RCRA, for the remaining property at the Facility. 42 U.S.C. § 6928(h).

Jurisdiction for the IAO and Amended IAO is predicated on Section 3008(h) of RCRA, 42 U.S.C. § 6928(h). Section 3008(h) of RCRA permits EPA to order corrective action in connection with releases of hazardous waste or constituents from a facility authorized to operate under Section 3005(e) of RCRA, 42 U.S.C. § 6925(e). By statutory definition, facilities authorized to operate un-

der Section 3005(e) of RCRA are known as "interim status facilities." The parties do not dispute that the surface impoundment constitutes an "interim status facility" or that it is the only interim status facility at the Follansbee Facility. Consent Decree, Section IV. Moreover, the parties do not contest that the existence of the surface impoundment is the only basis for EPA's authority to issue a corrective action order under Section 3008(h) of RCRA in connection with WPSC's Follansbee Facility, the previously mentioned "jurisdictional hook."

The Petition challenges the validity of the Amended IAO as contravening the Consent Decree and as exceeding EPA's authority under Section 3008(h) of RCRA. In turn, EPA has moved to dismiss the Petition on the grounds that the Consent Decree reserves EPA's right to issue the Amended IAO and that this Court does not have jurisdiction to resolve WPSC's challenge to EPA's authority. As well, the Amended IAO is not yet final as WPSC filed a request for a formal hearing before an Administrative Law Judge. Proceedings before the Administrative Law Judge have been stayed by agreement pending this Court's decision on the Petition.

## II. THE CONSENT DECREE

The Consent Decree entered eight years ago resolved a dispute between WPSC and EPA: whether WPSC had properly closed a surface impoundment at the Facility. EPA brought an administrative complaint pursuant to Section 3008(a) of RCRA and 40 C.F.R. Part 265 to enforce regulatory closure requirements and did not seek enforcement of Section 3008(h) corrective action requirements of RCRA. The Consent Decree does, however, contain a limited reference to corrective action relating only to corrective action that may be required to address releases from the surface impoundment.

WPSC contends that Section VII of the Consent Decree restricts EPA's corrective action authority by requiring that any corrective action, for which jurisdiction is based on the surface impoundment that was the subject of the Consent Decree, must be ordered, if at all, only under the terms of the

Consent Decree. Even assuming the EPA's broad interpretation of "facility", WPSC also contends that there still must be a release from an "interim status facility" to trigger EPA's corrective action authority under Section 3008(h) of RCRA. The EPA responds that nothing in the Consent Decree prevents EPA from using its statutory authority to order corrective action administratively, outside the confines of the Consent Decree. EPA submits that there is simply no language in the Consent Decree that supports WPSC's contention, while there is ample support for position that the Consent Decree imposes no restrictions on EPA's ability to order corrective action.

The Consent Decree was entered to resolve a dispute not involving corrective action, but the closure of a single surface impoundment. Section XV B describes the "Effect of Consent Decree" as being to settle

> ... the Civil claims in WPSC's complaint and the United States' counterclaims and shall constitute full settlement of the Final Decision and Order of *In re Wheeling–Pittsburgh Steel Corporation,* Appeal No.84–8, September 18, 1985.

These claims, counterclaims and final order all deal with closure of the impoundment, not corrective action. Had the parties agreed that the effect of the Consent Decree would be to bar or limit not just the EPA's claims relating to closure, but also its corrective action authority, the Consent Decree should have so specifically stated.

However, the parties specified that the EPA's corrective action authorities would all be reserved. In Section XVII, titled "Retention of Rights," the parties agreed that, "[e]xcept as set forth in Section XV [which discussed deals only with settlement of closure claims], the United States does not waive any rights or remedies available to the United States for any violation by WPSC of federal or state laws, regulations or permit conditions...." The parties even specifically addressed corrective action:

> The United States reserves its corrective action authority under 42 U.S.C.

§§ 6924(u) and (v) and 42 U.S.C. § 6928(h) and its authorities under CERCLA. Consent Decree, Section XVII.

In Section VII, the Consent Decree grants EPA the right to require corrective action in the area of the surface impoundment if groundwater monitoring data gathered under the Consent Decree indicates that hazardous wastes or constituents are being released from the impoundment. WPSC's argument boils down to the contention that by agreeing to this provision, the parties implicitly made it the exclusive means through which EPA could require corrective action at the Facility, at least insofar as the surface impoundment serves as the basis for EPA's jurisdiction to do so. The parties could have agreed to such a limitation on EPA's authority, but the language of the Consent Decree makes plain that they did not. The final sentence of Section VII itself specifies that "[t]his in no way limits any other corrective action authorities EPA may have under RCRA, 42 U.S.C. § 6901 et seq."

Finally, the Consent Decree provides that "the EPA's position shall control" in any dispute "as to meaning or implementation of the Consent Decree" arising under the Consent Decree, unless WPSC demonstrates "that EPA's position is arbitrary and capricious." Consent Decree, Section XIII. The Court cannot conclude that the EPA's position under the above circumstances is unreasonable and arbitrary. As well, EPA stated that it has used the above surface impoundment approach at other local manufacturing facilities in the area such as Weirton Steel and Koppers to establish EPA's continuing jurisdiction.

### III. DISCUSSION

As a matter of law, EPA submits that RCRA, like the Clean Water Act, 33 U.S.C. § 1251, was intended by Congress to preclude judicial review of compliance. In the decision of *Southern Pines Associates, by Goldmeier v. U.S.*, 912 F.2d 713 (4th Cir. 1990), the Court of Appeals held judicial review of compliance orders issued under the Clean Water Act was precluded until an enforcement action was begun or penalties were imposed. In that case, a landowner

and construction company sought a temporary restraining order and declaratory judgment asserting that the EPA lacked jurisdiction to issue a compliance order concerning fill of certain wetlands.

The Court recognized the broad goals and objectives of Congress by using the Clean Water Act to restore and maintain the chemical, physical and biological integrity of the Nation's waters. In that regard, the Clean Water Act is not the only environmental statute which allows EPA to issue pre-enforcement administrative orders. Both the Clean Air Act, 42 U.S.C. § 7401, and the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601, also provide for pre-enforcement agency action. The structure of these environmental statutes indicates that Congress intended to allow the EPA to act to address environmental problems quickly and without becoming immediately entangled in litigation. *Southern Pines Assoc.*, 912 F.2d at 716.

In the recent decision of *Amoco Oil Co. v. U.S.E.P.A.*, 959 F.Supp. 1318 (D.Colo. 1997), the District Court held that, because the statutory scheme of Section 3008(h) of RCRA provides the EPA with the option of either issuing corrective orders or instituting civil actions, Congress intended to preclude judicial review of corrective action orders unless the EPA sought judicial enforcement. Id. The Court's reasoning was as follows:

Congress enacted RCRA in 1976 to address waste disposal in general and hazardous waste in particular. *United States v. Valentine*, 885 F.Supp. 1506, 1511 (D.Wyo.1995)(citing *United States v. Aceto Agric. Chems. Corp.*, 872 F.2d 1373 [8th Cir.1989] ); H.R.Rep. No. 94–1491 Part I, 94th Cong., 2d Sess. *reprinted in* 1976 U.S.C.A.A.N. 6238, 6239–42. Congress characterized RCRA as a "prospective cradle-to-grave regulatory regime governing the movement of hazardous waste in our society." H.R.Rep. No. 1016, Part I, 96th Cong.2d Sess. 17, *reprinted in* 1980 U.S.C.A.A.N. 6119, 6120. Specifically, section 3008(h) of RCRA provides two enforcement options when the EPA determines that there has been a release of hazardous waste into the environment

from certain RCRA regulated facilities. 42 U.S.C.A. § 6928(h)(1). The EPA may (I) "issue an order requiring corrective action," or (2) "commence a civil action ... for appropriate relief, including a temporary or permanent injunction." 42 U.S.C.A. § 6928(h)(1). Violation of a section 3008(h) order may subject the violator to civil or administrative penalties of up to $25,000 per day. 42 U.S.C.A. §§ 6928(g), (h)(2). To obtain civil penalties, the EPA must institute a civil action. 42 U.S.C.A. § 6928(g). If the EPA seeks to impose administrative penalties, the violator is entitled to an administrative hearing before such penalties may be imposed. *See* 20 C.F.R. pts. 22, 24.

*Id.* at 1321.

■ Based upon the jurisdictional hook of the interim status facility, the broad definition of "facility", and the reservations made by the EPA in the Consent Decree, the Court concludes that the EPA is authorized to issue administrative orders which are for areas outside of the surface impoundment. Therefore, judicial review of the Amended IAO is precluded until the EPA seeks judicial enforcement.

The Court, therefore,

**ORDERS**

1. That the plaintiffs petition for resolution under consent decree, (Document No. 35), motion to strike (Document No. 49), and motion for preliminary injunction are **DENIED.**

2. That the defendant's motion to dismiss the petition for lack of jurisdiction (Document No. 45) is **GRANTED.**